TELA LOVE,               )
                             )
          Plaintiff,    )
                             )
v.                          )    Case No. CIV-09-231-RAW
                             )
MICHAEL J. ASTRUE,     )
Commissioner of Social   )
Security Administration, )
                             )
         Defendant.   )

## REPORT AND RECOMMENDATION

Plaintiff Tela Love (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See,* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on March 20, 1984 and was 24 years old at the time of the ALJ's decision. Claimant completed her through the eleventh grade, taking special education classes. Claimant has no past relevant work. Claimant alleges an inability to work

beginning March 20, 1984 due to diabetes mellitus, depression, obesity, bronchial asthma, anxiety disorder, cognitive disorder, NOS, features of borderline personality disorder, and status post foot injury with slight numbness in her lateral right foot.

## Procedural History

On October 29, 2004, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 10, 2008 which was continued to November 25, 2008, administrative hearings were held before ALJ John W. Belcher in Tulsa, Oklahoma. On January 22, 2009, the ALJ issued an unfavorable decision on Claimant's application. On May 8, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a limited range of light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) engage in a proper step five analysis; (2) order a consultative examination to resolve inconsistencies in the evidence; and (3) accord the proper weight to certain consultative medical opinions.

## Step Five Analysis

Claimant asserts the ALJ erroneously found Claimant could perform the jobs of bench assembler, conveyor line bakery worker, and assembler when her RFC does not allow her to perform the functions of these jobs as set forth in the *Dictionary of Occupational Titles*. The ALJ determined Claimant suffered from the severe impairments of diabetes mellitus, overweight, bronchial asthma, status post foot injury with slight numbness in lateral right foot, depression, cognitive disorder, NOS, anxiety disorder, features of a borderline personality disorder. (Tr. 16). He further arrived at an RFC for Claimant to perform light work with the restrictions of

> lift/carry 25 pounds occasionally and 20 pounds
> frequently; push/pull consistent with lifting and
> carrying limitations; stand/walk three hours each out of
> an eight hour day; sit for eight hours out of an eight
> hour day; must be able to change positions every hour;
> can occasionally climb stairs, balance, bend or stoop,
> kneel, crouch, crawl, and reach to fully extended length
> of arm or over shoulder with arm reaching unlimited;
> cannot climb ladders, ropes and scaffolding; occasionally
> avoid fumes, odors, dust, toxins, and gases; and should

avoid all hazardous and fast machinery and unprotected
heights. Mentally, the claimant can do simple tasks in
a habituated work setting and object oriented setting due
to inability to work closely with others, remembering
work like procedures, difficulties maintaining attention
and concentration for extended periods, and difficulties
with concentration, persistence and pace. In addition,
the claimant would need only superficial contact with co-
workers and supervisors, no close aggressive supervision
due to problems with supervisor criticism and
instructions, limited traveling as part of job duties,
and limited public contact.

(Tr. 19).

The job of bench assembler[2], Claimant alleges, requires the

use of heavy machinery. DOT 706.684-042. Another such job

identified by the vocational expert was that of assembler. DOT

700.684-070. Claimant's premise is faulty in that the ALJ did not

restrict her from heavy machinery but only "hazardous and fast

machinery." There is no indication that either a power press or a

rivet press that might be utilized in the two assembler jobs meet

this criteria. Claimant appears to be inserting her own opinion of

the nature of the equipment used in the performance of the

designated job rather than relying upon the DOT's description.

Claimant also contends this job requires close work with co-

workers and constant pace. Again, neither of these requirements

appear in the DOT description of the bench assembler, in spite of

_____

[2] Claimant makes much of the ALJ's mis-citing to the DOT as to some
of the jobs referenced in the decision. While making it somewhat
difficult to locate in the DOT, this scrivener error alone does not
require reversal.

Claimant's citation to that description in the footnotes of her rather abbreviated opening brief.[3]

The next job Claimant challenges is that of conveyor lin bakery worker. DOT 524.687-022. Claimant contends the job requires consistent pace and constant monitoring of the conveyor line in order to perform the job. The DOT does not state this conclusion as a requirement. The ALJ included all of Claimant's limitations in his questioning to the vocational expert. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). As such is the case, the ALJ was entitled to rely upon the vocational expert's testimony since the evidentiary record reflected an adequate basis for doing so. Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000). This Court finds no error in the ALJ's decision in this regard.

### Necessity for Consultative Examination

Claimant also contends the ALJ should have obtained a further consultative examination in order to resolve inconsistencies between two physicians' opinions rather than reject those opinions. The physicians at issue who conducted mental health evaluations on Claimant were Dr. Larry Vaught and Dr. John Hickman. On June 22, 2002, Dr. Vaught examined Claimant, giving her the WAIS-III test.

---

[3] Claimant's brief is somewhat short on explanation and references to the medical record. The references that are made to the voluminous record in this case do not include the Bates numbering used in the Commissioner's submission of the record. Instead, Claimant employs the numbering used at the agency level making the tracking down of specific documents more difficult.

He concluded Claimant has a Verbal I.Q. of 72, a Performance I.Q. of 62, and a Full Scale I.Q. of 65, which demonstrated Claimant was mildly mentally retarded. (Tr. 533). He diagnosed Claimant at Axis I – Diagnosis Deferred; Axis II – Mild Mental Retardation; and Axis III – See Physician's Report. (Tr. 534).

Dr. Hickman tested Claimant and completed a statement on her condition on August 11, 2008. Dr. Hickman also administered the WAIS-III test as well as a battery of other testing. He concluded Claimant had a Verbal I.Q. of 80, Performance I.Q. of 85, Full Scale I.Q. of 80. (Tr. 940). This level of functioning placed Claimant in the below average range of mental ability. Dr. Hickman also found, however, that Claimant has average working and general memory functions, 6th grade word recognition skills, 7th grade spelling skills, and low average auditory math skills. She obtained a severely elevated 6-8 MMPI-2 profile indicating a chronic psychiatric disturbance characterized by paranoid ideation, social alienation and difficulty concentrating and thinking. (Tr. 942-43).

Dr. Hickman diagnosed Claimant at Axis I – Cognitive disorder, NOS, developmental and secondary to reported head injury and diabetic comas, Anxiety disorder with panic attacks; Axis II – Features of a borderline personality disorder; Axis III – Insulin dependent diabetes mellitus poorly controlled, history of osteomyelitis of right foot, history of upper lobe pneumonia,

subacute pyelonephritis, asthma; Axis IV – Marked psychosocial stress from unemployment, homelessness and social alienation; Axis V – GAF – 55, marked cognitive, social and emotional difficulties. (Tr. 943).

Dr. Hickman also completed an RFC form on Claimant. He concluded Claimant showed moderate limitations in the ability to remember locations and work-like procedures, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and the ability to travel in unfamiliar places or use public transportation. (Tr. 944-46).

Dr. Hickman determined Claimant showed marked limitations in her ability to work in coordination with or proximity to others without being distracted by them, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to respond appropriately to changes in the work setting. (Tr. 945-46).

In his decision, the ALJ noted the 15 point difference between the two reports in the Full Scale I.Q. as well as the differences

in the diagnoses. He gave both reports "very little weight" because of these inconsistencies. Instead, the ALJ relied upon the physical consultative examinations. (Tr. 21).

Defendant has broad latitude in ordering consultative examinations. However, where there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997); 20 C.F.R. § 404.1519a(b)(4). By wholesale rejection of both Dr. Hickman's and Dr. Vaught's opinions due to a conflict in their conclusions, the ALJ effectively ignored the vast majority of the psychological testing performed in the case. In order to perform a proper step three analysis, the ALJ was required to resolve the conflict in the reports by obtaining a further consultative examination or re-contacting the existing examiners in an attempt to resolve the conflict without rejecting the reports altogether.

Defendant contends the size of the record in this case and the number of consultative examinations previously ordered should have some bearing upon whether this Court orders further examinations. It does not. The record either contains inconsistencies or it does

not, regardless of its size.

## Weight Afforded Medical Opinions

Because additional consultative testing is required, this issue is largely moot. This Court would note with curiosity that Dr. Hickman's and Dr. Vaught's opinions were not rejected because they conflicted with the medical evidence in the case but rather because they conflicted with one another in the level of severity of Claimant's condition. On remand, the ALJ shall resolve the conflict to his satisfaction and afford the opinions the appropriate weight.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of August, 2010.


KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE